No. 13,223.

HART *v.* HART.
(37 P. [2d] 754)

Decided September 24, 1934.    Rehearing denied November 13, 1934.

Mr. C. MILTON MORRIS, Mr. JOSEPH J. WALSH, Mr. DON-
ALD F. CLIFFORD, Mr. JAMES W. CREAMER, for plaintiff in
error.

Mr. HARRY CARSON RIDDLE, for defendant in error.

*In Department.*

MR. JUSTICE BOUCK delivered the opinion of the court.

A DECLARATORY judgment of the district court, purport-
ing to construe a last will and testament, is before us
for review. A controversy had arisen between the widow
of the testator and their son. That controversy involved
the question whether the son should be held accountable
to the estate for certain property which the testator in
his lifetime permitted the son to enjoy. The lower court
decided in favor of the son, as had the county court,
from which an appeal was duly taken by the widow, who
is the plaintiff in error here.

Joseph C. Hart, the testator, owned a farm in Camden
county, Missouri. His will, dated April 14, 1926, con-
tained, besides a $500 legacy to his daughter, the follow-
ing provisions:

"Second: I give, devise and bequeath unto my son,
Earl P. Hart, the farm upon which he is now residing,
the same being situate near Montreal Post Office, in
Camden County, Missouri, said farm to become the abso-
lute property in fee of my said son upon my death, free
and clear of any and all liens or encumbrances of what-
soever nature, such liens or encumbrances existing
against said farm, if any, at my death, are to be paid off
and discharged from other assets of my estate, so that
the fee simple title of said farm shall pass to and become
the sole property of my said son, at my death, free of
debt. In the event I should sell or dispose of said farm

during my lifetime, then in such event I hereby give, devise and bequeath to my said son a sum of money, in cash or property, equal in amount to the value of said farm at the date of my death, such value of the farm to be agreed upon between my widow and my said son; and if they fail to agree, then to be determined by three disinterested land owners of Camden County, to be appointed by the Probate Court of that County, whose duty it shall be to fix the value of said farm in determining the amount to be paid to my said son; it being my purpose to convey said farm to my said son at my death; or, in the event that I have previously conveyed same, he shall have a sum of money or property out of my estate equal to the value of said farm at my death. * * *

"Fourth: I give, devise and bequeath unto my beloved wife, Minnie A. Hart, all of the rents, income, interest or profits of whatsoever nature or kind received from the rest, residue or remainder of my estate, wherever located, and for and during such time as she does not remarry, and remains my lawful widow; said rents, income, interest or profits received from my estate to be paid over to her and become her absolute property; the same to be disposed by her as she may in her judgment see fit. In the event my said wife remarries, then this provision of this will in her behalf becomes null and void, and in lieu thereof I give, devise and bequeath to her a share of my estate equal to one-half (½) thereof, after deducting the value of the bequests hereinbefore made to my son and daughter. The remaining one-half (½) of said real or personal estate I give, devise and bequeath to my son. Furthermore, if my wife does not remarry, then at her death the remainder of my estate, real or personal, I give, devise and bequeath to my son. To make clear and positive this provision of my will, it is my intention, as herein expressed, that if my wife remarries, then she shall cease to draw the income, rents and profits from my estate, as hereinabove provided, and is to take and receive in lieu thereof an undivided one-half (½) of my

estate, both real and personal, after deducting the Five Hundred Dollars ($500.00) hereinabove bequeathed to my said daughter, and after deducting and setting apart the value of the farm hereinabove bequeathed to my said son; and furthermore, in addition thereto, the remaining one-half ($\frac{1}{2}$) of my estate, both real and personal, is to become the sole and absolute property of my said son. On the other hand, so long as the said Minnie A. Hart remains my lawful widow, then she is to receive the entire proceeds arising from my estate, except as to the item of Five Hundred Dollars ($500.00) bequeathed to my said daughter, and as to the farm or its value bequeathed to my said son; and at her death, then the entire remainder of my estate is to become the sole and absolute property of my said son.''

On December 14, 1929, the Missouri farm was exchanged by Hart for other property in Elgin, Kansas. This property was made up of a store building, certain personal property consisting of a stock of hardware merchandise together with store fixtures (which personal property we shall hereinafter refer to as ''the store''), and a residence. The store building was deeded direct to the testator himself; the residence deed was made out to the son as grantee by direction of the father without the son's knowledge, but was never delivered to the son; the store was covered by a bill of sale running to the son and duly delivered to the latter before the father's death. The hardware business was forthwith turned over to the father, but was presently operated by the son with the assistance and supervision of the testator. The latter permitted business stationery to designate the son as owner and manager; but there is strong and irrefutable documentary evidence to the effect that the testator regarded all the property as his own, with a privilege in the son to use it unless the testator should choose to resume possession.

The testator died March 13, 1930. The will named the widow and the son as joint executors. Neither of them

knew the contents of the will in advance. The widow, a resident of Denver, where she and her husband lived in an apartment house which he had purchased, presented the will for probate, and was appointed as sole executrix, the son declining to serve because a nonresident.

By uncontradicted evidence it appears that the estate of the testator was acquired by the joint efforts of himself and his wife, the plaintiff in error.

▮ The widow, in compliance with C. L. 1921, §5185, elected to renounce all benefit under the will. She is therefore entitled to inherit, in accordance with said statute, one-half of her husband's estate.

▮ It is contended by counsel for the widow that the Kansas residence and the store, though placed in the son's name as aforesaid, must be accounted for by the son as property of the father's estate. To the contrary it is argued that both residence and store were absolute gifts having nothing to do with the ultimate testamentary disposition. The importance of the controversy becomes apparent when the practical result under each theory and the respective values of the total estate are considered.

Ostensibly in compliance with the will, the widow and the son, without specifying any particular sum or sums, fixed the value of the farm as equivalent to the value of all the property taken by the testator in exchange. Their combined judgment to this effect was perpetuated in a written contract between them which appears in the record.

At the time of exchanging the Missouri farm for the Kansas property the Elgin residence was expressly valued by the parties to that transaction at $3,500 and the store at $10,250 (the stock being valued at $8,250 and the fixtures at $2,000), making a total of $13,750. The property belonging to the testator at his death included the apartment house in Denver and various miscellaneous items. The value placed by the exchanging parties

upon the store building, title to which was put in the testator's name, was $6,500.

If the Kansas property placed in the son's name was an absolute gift, the son is entitled under the will to retain the residence and the store so held in his name, and to receive from the estate—without any deduction for those two items—the full equivalent, in money or property, of the Missouri farm out of that part of the testator's property which is exclusive of said residence and store. In other words, if the two items were given him as an absolute gift, the son would get, in addition to the equivalent of the store building, not only the residence and the store themselves, but also the equivalent in money or property of these two items. Such a duplication of values would represent of course a radical departure from the originally contemplated disposition. If, however, the son's possession was merely that of his father, the residence and the store would have to be accounted for by the son as part of the father's estate, exactly as the store building must be; in which event the widow's half under her statutory election would manifestly be calculated upon an appreciably larger estate.

A reading of the will leaves in the mind no doubt that the testator wished his son to have either the original farm or, if the farm were sold or disposed of in his lifetime, a sum in money or property equal to the value of the farm at the testator's death. Since the farm was disposed of by the testator, the duty devolved upon the widow and the son, under the express terms of the will, to fix this sum. As already shown, they fixed the value only in terms of the aggregate value of what was taken in exchange for the farm, without specifying any sum in dollars and cents. The result was that the value of the store building was not segregated or fixed. By their act the widow and the son signified their willingness—and they must be held to have agreed—to make the original devise payable in the property consisting of the specific residence, store, and store building to which they had

solemnly ascribed an aggregate value exactly equal to the farm's value as of the date of Hart's death. Only by such an assumption is the appraisal agreement which had been entered into between widow and son given a rational meaning and saved from stultification and futility.

As we read the testimony in the record, including a considerable number of letters written by the testator, it is consistent with the views just stated and utterly inconsistent with any other. It is clear that the taking of title to the residence and the store in the son's name was in full accordance with the father's desire to bestow upon the son the benefit of using the property in advance of the testator's death, as the giving of the Missouri farm into the possession of the son had likewise been, and in mere furtherance of the original intention. The purpose of the father is nowhere shown to have changed; it was repeatedly emphasized. When the conveyance of some of the property substituted for the devised farm was made to the devisee in the manner above described, it did not constitute the conveyed property the property of the son. The latter held the title for the use and benefit of the father in the latter's lifetime, and for the use and benefit of the estate after the father's death. The meticulous care of expression and explanation in the will, and all the evidence before us, negative the slightest intention to make a gift to the son of any portion of the farm (or its equivalent in money or property) over and above and in addition to the devise itself.

Of course, the widow's half which she has elected to take might encroach upon a part of the devise to the son. This would be the case in the event that the estate property outside of the devise to the son and outside of the legacy to the daughter is not sufficient to pay the widow's half in full. The loss to the son must then be attributed to the statute. C. L. 1921, §5363. The courts have no power to repeal that statute.

It follows from what has been said that the judgment

of the district court must be reversed, and the case remanded for proceedings in harmony with this opinion.

Judgment reversed with directions.

MR. JUSTICE BURKE, sitting for MR. CHIEF JUSTICE ADAMS, and MR. JUSTICE HILLIARD concur.